UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JWD AUTOMOTIVE, INC., a Florida corporation, individually and as the representative of a class of similarly situated persons d/b/a NAPA Auto Care of Cape Coral,

      Plaintiff,

v.

DJM ADVISORY GROUP LLC, BANNER LIFE INSURANCE COMPANY, WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK, and JOHN DOES 1-10,

      Defendants.

Case No: 2:15-cv-793-FtM-29MRM

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motions to Dismiss Plaintiff's Complaint (Docs. ## 28, 30) filed on April 5, 2016 and April 6, 2016 and Plaintiff's Response in Opposition (Doc. #35) filed on April 19, 2016.  For the reasons set forth below, Defendants' Motions are denied.

**I.**

This is a junk fax case.  On December 21, 2015, Plaintiff JWD Automotive, Inc. filed a class-action complaint (Doc. #1) against DJM Advisory Group LLC (DJM Advisory), Banner Life Insurance Company (Banner), William Penn Life Insurance Company of New York (William Penn) and John Does 1-10 (collectively, Defendants).  The one-count Complaint alleges that Defendants violated the Telephone

Consumer Protection Act of 1991 (TCPA), as amended by the Junk Fax Protection Act (JFPA) of 2005, 47 U.S.C. § 227, by sending Plaintiff (and others) unsolicited commercial advertisements by facsimile machine (i.e. "junk faxes").  The junk fax Plaintiff received (the Fax) (Doc. #1-1) lists monthly life insurance premiums and invites recipients to submit their information to receive a complimentary, personalized quote for a DJM Advisory life insurance policy underwritten by Banner or William Penn. Plaintiff alleges that, by sending these junk faxes, Defendants: i) caused Plaintiff and others to lose paper and toner; ii) occupied their telephone lines and fax machines; iii) wasted their time; and iv) violated their privacy interests.  (Doc. #1, ¶ 36.)

Defendants have moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiff lacks constitutional standing.[1]  Defendants Banner and William Penn (the Underwriter Defendants) also seek dismissal of Plaintiff's claims against them under Rule 12(b)(6), since the Complaint "fails to include more than conclusory and formulaic allegations about [their] alleged responsibility for the fax." Should the Court deny the dismissal requests, Defendants move in the alternative to strike the Complaint's "fail-safe" class definition.  The Court will address each argument in turn.

---

[1] The Motions also request the now-moot alternative relief of a stay pending the Supreme Court's decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540, as revised (May 24, 2016).

- 2 -

**II.**

**A.  Plaintiff's Article III Standing to Maintain this Action**

Defendants argue that because the injuries alleged in the Complaint are "less than de minimis," Plaintiff does not have standing under Article III and the Complaint should be dismissed with prejudice under Rule 12(b)(1).  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  Constitutional standing sufficient to maintain an action in federal court requires, inter alia, that a plaintiff have "suffered an injury in fact."  Spokeo, Inc. v. Robins, 136 S. Ct. at 1547.  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Id. at 1548 (quoting Lujan, 504 U.S. at 560).

Defendants' contention that a junk fax transmission results in de minimis harm insufficient to confer standing under Article III has already been considered - and rejected - by the Eleventh Circuit.  In Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A., the Circuit Court concluded that the plaintiff had "Article III standing sufficient to satisfy the injury requirement because it ha[d] suffered a concrete and personalized injury in the form of the occupation of its fax machine for the period of time required for the electronic transmission of the data" – even though the transmission took only one minute, and irrespective of

whether the plaintiff had printed or reviewed the fax. 781 F.3d 1245, 1251-53 (11th Cir. 2015). In other words, in this Circuit, the successful transmission of even a single unsolicited fax causes an injury sufficiently concrete and particularized to confer standing under Article III to assert a TCPA claim.[2]

The Supreme Court's recent Spokeo decision does not compel a different result. That case involved a class-action claim under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., asserted against an online "people search engine" operator accused of creating inaccurate consumer reports. 136 S. Ct. at 1544. Before the case reached the Supreme Court, the Ninth Circuit had reversed the District Court's finding that the plaintiff lacked standing to assert the FCRA claim, instead holding that because the plaintiff alleged a violation of his "statutory rights," he had adequately pled Article III's injury-in-fact requirement. The

---

[2] Defendants also seek dismissal under Rule 12(b)(1) on the basis that the Complaint does not allege that the Fax was transmitted to Plaintiff's fax machine. According to Defendants, the Fax could have been transmitted to Plaintiff's email inbox, which would have resulted in no concrete harm. Despite not containing the specific phrase "the Fax was transmitted to Plaintiff's fax machine," the Complaint alleges that "Defendants' faxes used the Plaintiff's and the other class members' telephone lines and fax machine[s]," and that "[r]eceiving the Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing." (Doc. #1, ¶ 36.) From these allegations, the Court draws the more-than-reasonable inference that the Fax was indeed transmitted to Plaintiff's fax machine. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true." (citation omitted)). It is thus unnecessary for the Court to address whether a fax transmitted to an email inbox causes concrete harm sufficient to confer standing under Article III.

Supreme Court vacated that decision, concluding that the Ninth Circuit had performed an incomplete injury-in-fact analysis by considering only whether the plaintiff alleged a particularized harm, not whether he also alleged a concrete one. Spokeo, 136 S. Ct. at 1545; see also id. at 1548 ("We have made it clear time and time again that an injury in fact must be both concrete *and* particularized."). In remanding to the Ninth Circuit to consider "whether the particular procedural violations alleged in th[e] case [were] . . . sufficient to meet the concreteness requirement," id. at 1550, the Supreme Court observed that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. at 1549. To the contrary: Article III standing requires a "de facto" injury, that is, one that is "real, and not abstract."[3] Id. at 1548 (citations omitted).

Spokeo's limitation on Article III standing for claims arising out of statutory violations is inapplicable to the instant case for at least two reasons. First, Spokeo involved allegations of *intangible* harm resulting from statutory violations. Id.; cf. Nicklaw v. Citimortgage, Inc., --- F.3d ---, 2016 WL 5845682, at *3 (11th Cir. Oct. 6, 2016) (applying Spokeo to reject the argument

---

[3] The Spokeo court cited an agency's dissemination of a wrong consumer zip code as an example of a statutory violation for which the FCRA purports to provide redress, but which likely causes harm too "abstract" to confer standing. 136 S. Ct. at 1550.

that "the *intangible* harm that occurs when the discharge of a mortgage is not timely recorded constitutes a concrete injury" (emphasis added)). At least some of the particularized harm alleged in Plaintiff's Complaint – loss of toner and paper and the unwanted temporary occupation of Plaintiff's fax machine and telephone line – is tangible in nature. Such tangible harm, as Palm Beach leaves clear, is sufficient for standing purposes, even if de minimis. See Prindle v. Carrington Mortg. Servs., LLC, No. 3:13-CV-1349-J-34PDB, 2016 WL 4369424, at *9 n.11 (M.D. Fla. Aug. 16, 2016) ("Through the TCPA, Congress elevated a tangible, albeit de minimis, injury [of the unauthorized occupation of one's fax machine] to the status of a legally cognizable injury."); see also Fauley v. Drug Depot, Inc., No. 15 C 10735, --- F. Supp. 3d ---, 2016 WL 4591831, at *3 (N.D. Ill. Aug. 31, 2016) (observing that "de minim[i]s harm arguments do not undermine Article III standing" and concluding that the loss of toner and paper is "sufficiently 'real' to meet the concreteness requirement under Spokeo").

Second, the injuries alleged in Plaintiff's Complaint are not mere "procedural" statutory violations; rather, they are precisely the kinds of harm the TCPA aims to prevent. See Palm Beach, 781 F.3d at 1252 (observing that the occupation of one's "fax machine is among the injuries intended to be prevented by the [TCPA]"); see also H.R. REP. 102-317, 10 ("[Fax] telemarketing is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the

recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax."). The violation of a statutorily-protected substantive right, in turn, causes "real" harm, as opposed to harm that is "hypothetical" or "uncertain."[4] Church v. Accretive Health, Inc., No. 15-15708, --- F. App'x ---, 2016 WL 3611543, at *3 & n.3 (11th Cir. July 6, 2016) (per curiam) (not receiving information to which one is statutorily entitled is a "concrete" injury); cf. Guarisma v. Microsoft Corp., No. 15-24326-CIV, --- F. 3d ---, 2016 WL 4017196, at *4 (S.D. Fla. July 26, 2016) (plaintiff whose sales receipt showed more than last five credit-card digits alleged a concrete harm under the Fair and Accurate Credit Transactions Act (FACTA) since, "in enacting the FACTA, Congress created a substantive right for consumers to have their personal credit card information truncated on printed receipts," not merely a "procedural requirement for credit card-using companies to

---

[4] The two post-Spokeo cases cited in Defendants' Notice of Supplemental Authority (Doc. #42) are inapposite. In Smith v. Aitima Medical Equipment, Inc., the district court held that the injury, if any, caused by the transmission of one unsolicited phone call was de minimis and thus insufficient to confer Article III standing to assert a TCPA claim. No. ED CV 16-00339-AB (DTBx), 2016 WL 4618780, at *4 (C.D. Cal. July 29, 2016). In so holding, the court did not rely on Spokeo, but on three district court cases and one Ninth Circuit case. Id. at *4. Because Palm Beach rejected the claim that a de minimis injury cannot confer Article III standing under the TCPA, Smith is not persuasive here. As for Sartin v. EKF Diagnostics, Inc., that court's decision to grant a defendant's motion to dismiss a junk fax claim on standing grounds was based on the plaintiff's *failure to allege* any concrete harm resulting from the receipt of a single fax, not on the plaintiff's *inability* to do so. No. CV 16-1816, 2016 WL 3598297, at *4 (E.D. La. July 5, 2016). Here, Plaintiff has alleged particularized and concrete harm under the TCPA and thus has standing.

follow"). Accordingly, dismissal of Plaintiff's Complaint on standing grounds is not warranted.

B. **Whether the Complaint Adequately States a Claim Against Banner and William Penn**

The Underwriter Defendants alternatively seek dismissal of Plaintiff's suit against them pursuant to Rule 12(b)(6), arguing that the Complaint lacks sufficient factual allegations tying them directly or vicariously to the Fax's creation or dissemination. The TCPA makes it "unlawful for any person . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" unless there exists an "established business relationship" between the "sender" and the recipient meeting certain criteria. 47 U.S.C. § 227(b)(1)(C). Although the Act does not further define what it means to "send" a fax, the Federal Communications Commission's (FCC) 2006 regulations regarding the restrictions on facsimile advertising (the 2006 Regulations) define the "sender" of a fax as any "person or entity on whose behalf a facsimile unsolicited advertisement is sent **or** whose goods or services are advertised or promoted in the unsolicited advertisement."[5] 47 C.F.R. § 64.1200(f)(10) (emphasis added). In other words, the FCC's current view is that **one whose goods or services are promoted in the unsolicited fax may be held strictly liable under the TCPA for its transmission**, even absent a showing that the fax was sent

---

[5] The FCC is the entity tasked with "prescrib[ing] regulations to implement" the TCPA. Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015) (quoting 47 U.S.C. § 227(b)(2)).

on its behalf. Siding & Insulation Co. v. Alco Vending, Inc., 822 F.3d 886, 892-95 (6th Cir. 2016).

The fax at issue here advertises "life insurance products [that] are underwritten by Banner Life Insurance Company . . . and William Penn Life Insurance Company." (Doc. #1-1.) Accordingly, at least pursuant to the 2006 Regulations, the Complaint adequately alleges that the Underwriter Defendants "sent" the Fax, so as to state a claim of strict direct-sender liability under the TCPA against each. See Supply Pro Sorbents, LLC v. Ringcentral, Inc., No. C 16-02113 JSW, 2016 WL 5870111, at *4 (N.D. Cal. Oct. 7, 2016) (inclusion of defendant's name and website at the bottom of a fax promoted defendant's services and thus was "sufficient to permit Defendant to fall with[in] the statutory definition of sender").[6] The Underwriter Defendants nevertheless argue that, since the Complaint does not allege facts supporting the conclusory assertion that the Fax was sent *on their behalf*, Palm Beach requires dismissal Plaintiff's claims against them.

While Palm Beach did apply an "on behalf of" theory of direct-sender liability, that case involved a fax transmitted in 2005, *prior* to the promulgation of the FCC's 2006 Regulations. 781 F. 3d at 1254 n.9, 1257-58. It is, therefore, fair to read Palm Beach as refusing retroactive application of the 2006 Regulations, not as rejecting the FCC's current "strict" view of direct-sender

---

[6] "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ." Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).

liability under the TCPA for faxes sent *after* the 2006 Regulations took effect.[7] See Arkin v. Innocutis Holdings, LLC, No. 8:16-CV-0321-T-27TBM, --- F. Supp. 3d ---, 2016 WL 3042483, at *5 (M.D. Fla. May 26, 2016) (defendant's reliance on Palm Beach to determine whether the complaint properly alleged direct-sender liability for a fax sent in 2015 was "misplaced").

Because the Eleventh Circuit has not expressly rejected the strict definition of "sender" articulated in the 2006 Regulations, and because the junk fax Plaintiff received was allegedly sent sometime between October 2014 and January 2015 (Doc. #1, ¶ 13), this Court will apply that definition. To refuse to do so would likely violate the Hobbs Act, 28 U.S.C. § 2342, which grants the circuit courts of appeals exclusive jurisdiction over challenges to administrative agencies' interpretation of statutory language. Sliwa v. Bright House Networks, LLC, No. 2:16-CV-235-FTM-29MRM, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016) ("[T]his court, like all district courts, 'lacks jurisdiction under the Hobbs Act to consider the argument that the FCC incorrectly interpreted [the TCPA]." (internal alterations omitted) (quoting Murphy, 797 F.3d at 1305)); see also Imhoff Inv., L.L.C. v. Alfoccino, Inc., 792 F.3d 627, 637 (6th Cir. 2015) (observing that a direct challenge at the district court level to "the legitimacy of the FCC's definition of sender in [Section] 64.1200(f)(10) [is un]likely to

---

[7] In Alco Vending, the Sixth Circuit concluded that because the 2006 Regulations "expanded the scope of liability under the TCPA," they should not be applied retroactively. 822 F.3d at 894.

be viable because the Hobbs Act confers jurisdiction on Courts of Appeal to review FCC regulations only by direct appeal from the FCC"); Chhetri v. United States, 823 F.3d 577, 586–87 (11th Cir. 2016) (affirming the district court's conclusion that it lacked jurisdiction under the Hobbs Act to review the validity of a regulation promulgated by a federal agency); CE Design, Ltd. v. Prism Bus. Media, Inc., 606 F.3d 443, 449 (7th Cir. 2010) ("[T]he Hobbs Act prevents the district court from reviewing the validity of FCC regulations."). Because the Plaintiff has adequately alleged a theory of strict liability against the Underwriter Defendants as "senders" of the Fax, the Court denies their request for dismissal under Rule 12(b)(6).[8]

C.  **Plaintiff's Proposed "Fail-Safe" Class**

Finally, Defendants move in the alternative to strike the Complaint's class allegations on the ground that Plaintiff has proposed an impermissible "fail-safe" class. A fail-safe class is one whose definition incorporates the elements of a successful legal claim, such that determining whether an individual or entity is a member of the class "front-ends a merits determination on [the defendant's] liability." Alhassid v. Bank of Am., N.A., 307 F.R.D. 684, 694 (S.D. Fla. 2015); see Kamar v. RadioShack Corp., 375 F. App'x 734, 736 (9th Cir. 2010) ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when

---

[8] The Court need not, and therefore does not, address herein whether the Complaint adequately alleges a theory of vicarious liability against the Underwriter Defendants for the Fax's transmission.

the class itself is defined in a way that precludes membership unless the liability of the defendant is established."). Being granted membership in the class is thus synonymous with a victory on the underlying claim. Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 538 (6th Cir. 2012) ("[A] 'fail-safe' class is one that includes *only* those who are *entitled* to relief. . . . [E]ither those 'class members win or, by virtue of losing, they are not in the class' and are not bound [by the judgment]." (quoting Randleman v. Fid. Nat. Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011))).

The class proposed in Plaintiff's Complaint consists of:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, and (3) which Defendants did not have prior express permission or invitation [to send], or (4) which did not display a proper opt-out notice. Excluded from the Class are the Defendants, their employees, agents and members of the Judiciary.

(Doc. #1, ¶ 19.) The Court agrees that, as written, the proposed class appears "fail-safe." Rather than simply requiring, for example, that an individual or entity have received the same fax Plaintiff received, the class incorporates the elements of a viable junk fax claim, including the applicable statute of limitations. See 47 U.S.C. § 227(b)(1)(C); 28 U.S.C. § 1658(a). Analyzing whether a particular individual is a proper member of Plaintiff's class will, therefore, result in a merits-based determination on Defendants' liability under the TCPA to that individual.

It is less clear, however, that such a class is "impermissible." The Eleventh Circuit has not yet addressed whether a fail-safe class can nevertheless be certified, and there is a split of authority among the Circuit Courts that have decided the issue. See Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015) (collecting cases). Notwithstanding, this Court concludes – as have several others – that such argument is more appropriately raised at the class-certification stage. See, e.g., Arkin, 2016 WL 3042483, at *7; Mauer v. Am. Intercontinental Univ., Inc., No. 16 C 1473, 2016 WL 4698665, at *3 (N.D. Ill. Sept. 8, 2016); Haghayeghi v. Guess?, Inc., No. 14-CV-00020 JAH-NLS, 2015 WL 1345302, at *6 (S.D. Cal. Mar. 24, 2015). Consequently, the Court denies Defendants' request to strike Plaintiff's proposed class at this time.

Accordingly, it is hereby

**ORDERED:**

Defendants' Motions to Dismiss Plaintiff's Complaint (Docs. # 28, 29) are **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this 21st day of November, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record