UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JWD AUTOMOTIVE, INC., a Florida corporation, individually and as the representative of a class of similarly situated persons d/b/a NAPA Auto Care of Cape Coral,

    Plaintiff,

v.                              Case No: 2:15-cv-793-FtM-29MRM

DJM ADVISORY GROUP LLC, BANNER LIFE INSURANCE COMPANY, and WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on Plaintiff's Unopposed Revised Motion for Preliminary Approval of Class Action Settlement and Notice to the Settlement Class (Doc. #70) filed on June 23, 2017, and Plaintiff's Unopposed Motion to Substitute or Amend Motion for Preliminary Approval of Class Action Settlement and Notice to Class (Doc. #72) filed on June 30, 2017. For the reasons stated below, the court denies both motions without prejudice.

**I.**

This is a junk fax case. On December 21, 2015, Plaintiff JWD Automotive, Inc. filed a class-action complaint (Doc. #1) against

DJM Advisory Group LLC (DJM Advisory), Banner Life Insurance Company (Banner), and William Penn Life Insurance Company of New York (William Penn) (collectively, Defendants).[1] The one-count Complaint accuses Defendants of violating the Telephone Consumer Protection Act of 1991 (TCPA), as amended by the Junk Fax Protection Act (JFPA) of 2005, 47 U.S.C. § 227, by sending Plaintiff (and others) unsolicited commercial advertisements by facsimile machine (i.e. "junk faxes"). Plaintiff alleges that, by sending these junk faxes, Defendants caused Plaintiff and others to lose paper and toner, occupied their phone lines and fax machines, and violated their privacy interests.

On November 21, 2016, the Court denied (Doc. #54) the two defense motions (Docs. ## 28, 30) seeking to dismiss the Complaint or, alternatively, to strike the Complaint's "fail-safe" class definition. The parties have since agreed to settle this lawsuit[2] and now request an order preliminarily approving the Settlement Agreement (Doc. #70-1) and authorizing notice and a proof of claim form be sent to members of the proposed class.[3] Plaintiff also

---

[1] The Complaint originally listed John Does 1-10 as defendants, but Plaintiff has since voluntarily dismissed them (Doc. #64).

[2] Prior to reaching the settlement, Plaintiff had not yet filed a Motion for Class Certification.

[3] On June 13, 2017, the Court held a telephonic hearing on Plaintiff's original Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice to Class (Doc. #62), after which Plaintiff filed the revised Motion now before the Court.

seeks leave to amend the Settlement Agreement to, in essence, increase the number of potential class members from 359,000 to 488,424.

## II.

**A. Motion to Amend Motion for Preliminary Approval**

Plaintiff "respectfully requests leave to substitute or amend the Motion [for Preliminary Approval] to clarify that, based on Plaintiff's investigation and an analysis of Defendants' agent Comcast's call records, Defendants may have attempted to send faxes to approximately 488,424 unique fax numbers and that this likely resulted in the successful delivery of facsimile advertisements to approximately 359,000 recipients." (Doc. #72, p. 2.) As amended, the Settlement Agreement would read: "Defendants called approximately 488,424 unique fax numbers that Plaintiff's attorneys have concluded based on a review of call records resulted in the successful delivery of facimile [sic] advertisements to approximately 359,000 recipients." (Doc. #72-2.) This is the only change to the Settlement Agreement proposed.

While not entirely clear, it appears Plaintiff is saying that, of the 488,424 faxes Defendants attempted to transmit, only 359,000 were received by (i.e. caused a temporary "occupation" of) the fax machine on the other end. If that is indeed the case, the Court hesitates to permit expansion of the class in this manner. Unlike the 359,000 class members whose statutorily-protected right to be

free from intrusive junk faxes was allegedly violated by a successful fax transmission, none of the 130,000 new class members to whom the attempted transmission *failed* appears to have suffered any concrete harm, as required to confer Article III standing.[4] For example, none of their fax toner or paper was consumed, and no unauthorized occupation of their fax lines occurred. See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1251 (11th Cir. 2015) (concluding Plaintiff had "Article III standing sufficient to satisfy the injury requirement because it ha[d] suffered a concrete and personalized injury in the form of the occupation of its fax machine for the period of time required for the electronic transmission of the data (which, in this case was one minute)"); see also Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) ("A 'concrete' injury must be 'de facto'; that is, it must actually exist.").

Plaintiff's request to expand the class to include nearly 130,000 members who seemingly lack standing, but who may nevertheless be eligible to collect a *pro rata* share of the $3.5 million settlement fund, potentially diminishes the amount available to pay class members who clearly do have standing, and thus calls into question whether Plaintiff "will fairly and

---

[4] The Court discussed Plaintiff's own Article III standing to pursue this action in significant detail in its Opinion and Order denying Defendants' Motions to Dismiss. (Doc. #54, pp. 3-8.)

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court wishes to have this concern addressed prior to amendment and preliminary approval. Accordingly, Plaintiff's Motion to Amend is denied without prejudice.

**B.  Revised Motion for Preliminary Approval**

The Court also denies without prejudice Plaintiff's Revised Motion for Preliminary Approval of Class Action Settlement and Notice to the Settlement Class. The Court's additional concern is that, while the Settlement Agreement defines the class as "[a]ll persons who were sent **one or more facsimiles** December 21, 2011 to the present" (Doc. #70-1, p. 4 (emphasis added)), and further states that "[c]laiming class members shall be paid their *pro rata* share of the Settlement Fund, up to and no more than $500.00 **per fax**" (id. p. 6 (emphasis added)), the proposed Proof of Claim Form (Doc. #70-1, p. 26) does not allow class members who received more than one fax at the same fax number to so indicate. As a result, some class members may be prevented from recovering their true *pro rata* share of the settlement fund.[5] The amended documents should either resolve this discrepancy or explain to the Court why there is, in fact, no discrepancy.

---

[5] The JFPA authorizes recovery of $500 for each violation, and a single junk fax can cause multiple violations. Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1106 (11th Cir. 2015).

Additionally, before the Court will preliminarily approve a settlement and authorize notice to the proposed class, the following additional changes – indicated by the underlined text – are contemplated:

- Page 2 of the Notice of Class Action Settlement: "You must send your request to each of the following attorneys, and they will inform the Court of your request."

- Page 3 of the Notice of Class Action Settlement: "You must also serve copies of your objection on Class Counsel, Counsel for Insurer Defendants, and Counsel for DJM Advisory Group (at the addresses above), postmarked by the same date."

- Proof of Claim form (both sections 2(a) and 2(b)): "mine or my company's at some point from December 21, 2011 through the present."

Furthermore, the Court is disinclined to require class members who object to the settlement to include in their objection "a statement of the identity (including name, address, phone number and email) of any lawyer who was consulted or assisted with respect to any objection," as the parties have proposed. (See Doc. #70-2, pp. 4-5.) The parties may respond to these anticipated changes.

Finally, with respect to the approximately $1.167 million in attorneys' fees (exclusive of costs) the parties have agreed Plaintiff's counsel will recover, the Court notes that this sum equals 33.3% of the total $3.5 million settlement fund, and thus exceeds the 20-25% "benchmark" that the Eleventh Circuit has recognized as presumptively reasonable. Faught v. Am. Home Shield

Corp., 668 F.3d 1233, 1242 (11th Cir. 2011).  Assuming this case ultimately proceeds to a final fairness hearing on the settlement, the Court will not approve an attorneys' fee award of this amount, unless the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), are satisfied.  Faught, 668 F.3d at 1242.

It is hereby

**ORDERED:**

1.  Plaintiff's Unopposed Revised Motion for Preliminary Approval of Class Action Settlement (Doc. #70) and Unopposed Motion to Substitute or Amend Motion for Preliminary Approval of Class Action Settlement and Notice to Class (Doc. #72) are **DENIED without prejudice**.

2.  Any party wishing to file revised documents or otherwise respond to the issues raised herein must do so **on or before Monday, July 17, 2017**.

**DONE and ORDERED** at Fort Myers, Florida, this 6th day of July, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record